TESSIE GOTTLIEB,
Plaintiff Below, Appellant,

*vs.*

HEYDEN CHEMICAL CORPORATION, a corporation of the State of Delaware,
Defendant Below, Appellee.

*Supreme Court, On Appeal, August 29, 1952.*

WOLCOTT and TUNNELL, Justices, and RICHARDS, President Judge, sitting.

*Robert C. Barab*, for plaintiff-below, appellant.

*Richard F. Corroon*, of Berl, Potter & Anderson, and *Harmon Duncombe* and *George Rowe, Jr.*, of New York City, for defendant-below, appellee.

TUNNELL, Justice, delivering the opinion of the court:

Since only one important argument is raised in these petitions which was not carefully considered prior to the filing of our opinion, an order permitting limited re-argument might have been entered without comment if it did not appear that the opinion itself may have created some confusion. (see *ante p.* 82.) The petitions and their supporting briefs reveal that both parties have taken the opinion to decide matters which we had no intention of deciding and, what is worse, to decide them according to views we do not entertain. Moreover, neither party agrees with the other as to what the court did. If these reader reactions are typical, therefore, the draftsmanship of the opinion was singularly inept.

It apparently would have been of some assistance if, after passing upon what it was necessary for us to decide, our opinion had gone on to describe the factual issue to be tried in the Court of Chancery, stating who would have the burden of proof and what quantum of proof would be required. It is to be hoped that this memorandum giving our reasons for denying re-argument of several issues will bring about some clarification.

Defendant says that our opinion, though professing otherwise, has actually destroyed all practical distinctions between cases where the directors grant stock options to themselves at corporate expense without stockholder ratification and cases where ratification is obtained. If it did so, the opinion is a blight.

We understand that where the board members vote themselves stock options and do not obtain stockholder ratification, they themselves have assumed the burden of clearly proving their

utmost good faith and the most scrupulous inherent fairness of the bargain.[1] *Fletcher, Cyclopedia of Corporations, (Perm.Ed.), Secs.* 913, 916, and 921. Where there is stockholder ratification, however, the burden of proof is shifted to the objector. *Holthusen v. Edward G. Budd Mfg. Co., (D.C.),* 53 *F.Supp.* 488. In such a case the objecting stockholder must convince the court that no person of ordinarily sound business judgment would be expected to entertain the view that the consideration furnished by the individual directors is a fair exchange for the options conferred.

■ Where the directors have represented both themselves and the corporation, and where there was no ratification by stockholders, and the action is thereupon duly challenged, the court will usually have no choice but to employ its own judgment in deciding the perhaps very close and troublesome questions as to whether the evidence shows that the directors in fact used the utmost good faith and the most scrupulous fairness. Where there was stockholder ratification, however, the court will look into the transaction only far enough to see whether the terms are so unequal as to amount to waste, or whether, on the other hand, the question is such a close one as to call for the exercise of what is commonly called "business judgment". In the former case the court will reverse the decision of the stockholders; in the latter it will not.

■ Use of this expression "business judgment" in instances where there was stockholder ratification apparently has been the cause of some difficulty. It is axiomatic in such cases that the courts will not substitute their own "business judgment" for that exercised in good faith by the stockholders. But by the standards of a purist, of course, this is an inaccuracy of speech, for the court must exercise some sort of business judgment whether there was ratification or not. We do not think, however, that the expression "business judgment", as used in the above axiom, is intended to apply to any cases except those in which it is important to rely upon persons of good judgment. A distinction in degree is used as if it were a difference in kind. This usage is borrowed from col-

---

[1] There is no occasion here to deal with the subject of voidability.

loquial speech, and, though at first sight it may be confusing, actually it is a serviceable distinction. A homely, though somewhat extreme, illustration of this same linguistic usage would be to say that a man does not need to be a "judge of horse-flesh" to refrain from buying a Clydesdale for racing. If we bear in mind that "business judgment" is thus a term of art, the difficulty here encountered will largely disappear.

■ What is to be tried before the Chancellor in such a case as ours, therefore, is, as we said in our opinion, an issue as to the presence or absence of consideration which has a value reasonably related to the value of the concessions made by the corporation. *Rogers v. Hill,* 289 *U.S.* 582, 53 *S.Ct.* 731, 77 *L.Ed.* 1385. If appraisement of these respective values brings the court within the realm in which reasonable men, fully informed and acting in good faith, may be expected to differ, then the court will enter judgment for the defendant. Within this realm the majority may enforce its will upon a dissenting minority; outside it they may not.

In our view, therefore, the entire atmosphere is freshened and a new set of rules invoked where formal approval has been given by a majority of independent, fully informed stockholders. But even so, we cannot summarily throw out the plaintiff's case in the face of allegations, *inter alia,* that "the issuance of certain options bears no relationship to services rendered or to be rendered by the recipients thereof", and that the granting of the option constitutes "an illegal gift of corporate assets". Defendant presses us to hold, apparently as a proposition of law, that because the contracts before us require the optionees to remain in the company's employ until January 1, 1952,[2] in order to avail themselves of the first installment of shares, and until two later dates for the other two installments, it follows, therefore, that the transaction cannot be regarded as a gift in part or an instance of waste or spoliation of corporate assets. We cannot agree.

It may be readily conceded that the requirement of remaining with the company is some consideration, but retention of services for one day is just as accurately denominated consideration as

---

[2] Subject to certain exceptions referred to in the opinion.

retention for ten years. An important question, which is not yet answered, is whether these services and these options can sensibly be deemed to be the subjects of a fair exchange. This is obviously not a mere question of law. An issue of fact[3] is raised, as to which, as yet, no evidence has been taken.

If this stockholder can show the Chancellor that the value of the options covered by these contracts is so much greater than the value of retaining these men with the company on their present scales of salaries and bonuses up until the respective dates specified in the contracts that no reasonable businessman, fully informed as to the respective values, and acting in good faith, could be expected to consider the bargain attractive to the corporation, then it would be shocking to preclude her from her right to prove it. There is no alternative to taking the evidence on such an issue, and there ought to be none. Jurisprudence has as yet devised no method for suppressing baseless suits without also impeding just ones, and no court yet knows in which of the categories the instant action belongs.

We conclude that we have no right to heed the strenuous protest that we are encouraging too many suits by minority stockholders.

Plaintiff, on the other hand, urges that we ought either to have declared the option plan invalid in respect to the 25,500 shares not yet subjected to option agreements or to have ordered injunction preventing defendant from issuing any options in respect to them otherwise than in accordance with the requirements set out in this court's opinion. Plaintiff says that no further ratification is necessary, and, reasoning from that premise, she complains that the board of directors will probably have already issued the options, and it will be too late for her to obtain relief, before she ever receives the first intelligence of the board's action.

It is the plaintiff who has said that no further ratification of the option agreements will be necessary in respect to the 25,500

---

[3] *Rosenthal v. Burry Biscuit Corporation*, 30 *Del.Ch.* 299, 305; 60 *A.2d* 106, 109.

shares. The court made no such statement. Whether any future ratification will be sought is a decision to be made by the board of directors. Whether they seek further ratification will presumably be influenced, among other considerations, by the identity of the optionees and the amount of personal risk the board members are willing to assume. If the transaction is with the members of the board of directors, of course, one set of rules will apply, and if it is with strangers, entirely another set.

It appears to us that plaintiff's basic misconception is her assumption that there has been any ratification of the option contracts covering the 25,500 shares not yet in fact subjected to any contracts. As we attempted to point out in our opinion, nobody yet knows what all of the terms of these future contracts will be. The stockholders have done no more than to indicate approval of the proposal to allocate 25,500 more shares to future stock options of a certain general pattern. They certainly cannot be taken to have approved specific bargains not yet proposed, or perhaps not yet even conceived.

Plaintiff overlooks the same important point when she asks for re-argument in respect to the 24,500 shares. She says that although the specific consideration named in those contracts was approved by certain stockholders, since the ratification itself conferred upon the board the power to change the terms of the contracts, therefore, the board members may hereafter rewrite the contracts as they please, and they will be able successfully to contend that the new and substituted consideration still enjoys the prestige of ratification by the stockholders. We can hardly imagine that any court would seriously entertain such an argument.

In respect to the above matters, therefore, re-argument is denied.

■ But defendant has asked leave to amend its original petition for re-argument by inserting into it the allegation that the court's opinion is contrary to *Paragraph 2046, Revised Code of Delaware* 1935, which states that stock may be paid for not only in cash, but by labor, personal property, real property, or leases thereof, and then goes on to provide in part as follows:

"And in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases thereof, shall be conclusive."

Since counsel have not heretofore dealt with this contention, the members of the court desire assistance upon it. Without attempting in any way to limit counsel, we do point out that we wish to have at least these two aspects of the problem developed:

(1) Does this statutory language apply to stock options of the character here under consideration?

(2) Does the statute apply to ratification by stockholders?

An order may be submitted permitting amendment to the original petition for re-argument, fixing a schedule for the filing of briefs, and setting a date for the oral argument.