**Eleanor M. WILDERMAN, as a stockholder of Marble Craft Company, Inc., in her own right and on behalf of Marble Craft Company, Inc., Plaintiff,**

v.

**Joseph WILDERMAN and Marble Craft Company, Inc., a Delaware corporation, Defendants.**

Court of Chancery of Delaware, New Castle.

Jan. 10, 1974.

Walter L. Pepperman, II, Robert F. Stewart and Thomas Reed Hunt, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

H. Alfred Tarrant, Jr., of Cooch & Taylor, Wilmington, for individual defendant.

MARVEL, Vice Chancellor:

Eleanor M. Wilderman, the plaintiff in this action, sues in her own right and in her capacity as a stockholder with an interest in one-half of the issued and outstanding stock of the defendant Marble Craft Company, Inc. She primarily seeks a ruling to the effect that the defendant Joseph M. Wilderman (the president of the corporate defendant and her former husband) for the fiscal years ending March 31, from 1971 through 1973, caused excessive and unauthorized payments [1] to be made to

---

1. As originally filed the complaint alleged only an overpayment of $71,738.31 for fiscal 1971. Subsequent amendments alleged over-payments of $14,200 for fiscal 1972, and of $66,093.40 for the fiscal year 1973.

himself out of earnings of the corporate defendant and that such payments, made in the form of unearned and unauthorized salary and bonuses, must accordingly be returned to the treasury of Marble Craft Company.

Plaintiff asks that upon the Court ordered return of such excessive payments to the corporate treasury that they be treated as corporate profits and required to be distributed as dividends, thereby opening the way to plaintiff to share in the net corporate profits as a stockholder with a 50% equity in her corporation. Plaintiff also asks that appropriate adjustments be made in the corporate defendant's pension plan so as to reflect the return to the corporate treasury of amounts found to be excessive compensation received by the defendant for the fiscal years in question. Also sought is an injunction against disbursement by the individual defendant of moneys from corporate funds or the transfer by such defendant of corporate assets without the approval of the board of directors of the corporation. Finally, plaintiff seeks an order directing the continuance of the business of the corporate defendant under a custodian as provided for under the provisions of 8 Del.C. § 226.

Marble Craft is engaged in the business of installing ceramic tile and marble facings in residences and commercial buildings, such business having been organized by the individual parties to this action some fifteen years ago, being originally operated from the family home. Defendant's initial knowledge of the tile business was gained while working briefly for his father-in-law prior to going into business with his former wife, and there is no doubt but that defendant has been the major force in the business of the corporate defendant inasmuch as he has done most of the estimating, supervising and business getting for the corporation, working up to sixty hours or more per week on corporate business. Plaintiff, on the other hand, has been primarily a bookkeeper for the business, although there is no doubt but that plaintiff is fully versed in the tile business, her father having started such a business in 1929. Significantly, in the beginning of the enterprise the parties' respective compensation was not entirely disparate, as it is now, defendant having initially drawn $125 a week compared to plaintiff's $75.

The business proved successful as a family venture, and in 1961 it was incorporated under the name of Marble Craft Company, Inc., its authorized capital shares consisting of one hundred shares of stock being issued to plaintiff and defendant as joint tenants in exchange for the assets of the business. By-laws providing for the election of two directors were adopted, and the parties, as the duly elected directors, thereupon chose themselves to fill the designated corporate offices, defendant being elected president and the plaintiff vice president, secretary, and treasurer.

The controversy here involved primarily centers around the amount of compensation which defendant has caused to be paid to himself for the fiscal years 1971, 1972 and 1973, compensation which had its origin in a policy[2] designed to avoid corporate taxation by paying out the net corporate profits of Marble Craft Company in the form of executive compensation before the end of each taxable year, thus avoiding double taxation. Accordingly, dividends attributable to corporate profits have never been formally paid until ordered by the Court in the course of this litigation. Such policy of avoiding dividend payments initially worked to the advantage of both parties

2.  This policy, however, encountered the opposition of the Internal Revenue Service which reduced the deduction allowable to Marble Craft for salary paid to defendant from $30,000 to $20,000 for 1965, from $30,000 to $25,000 for 1966, and from $60,000 to $40,000 for 1970. Presumably the effect of this action was twofold (1) the amount of disallowance was taxed as income to the corporation, and (2) the amount of disallowance less the tax due thereon became a de facto dividend.

and their two children, the financial advantage to plaintiff in the plan having been virtually destroyed by the parties' separation and divorce. Thus, following the breakup of the home, plaintiff was largely excluded from the benefits enuring to defendant as a result of the large amounts he proceeded to pay himself. Asserting his authority as the chief executive officer of the corporate defendant, defendant caused the amount of compensation to be paid to him to be increased from $25,000 in 1963 to $60,000 in 1970, the last year for which salary payments to defendant are not questioned, such salary having concededly been authorized by corporate resolution. Next, despite the pendency of this action defendant paid himself a bonus of $71,738.71 in addition to a flat salary of $20,800 for the fiscal year 1971, the salary being based on an authorized draw of $400 per week, this being the first year after marital differences arose in which defendant could not point to at least tacit corporate authorization as to the full amount of his compensation. For the fiscal year 1972 defendant paid himself total compensation of $35,000, a year in which corporate profits were substantially lower than those of the previous year due to a building trades strike, and for the fiscal year ending March 31, 1973, defendant caused payment to himself of total compensation in the amount of $86,893.40. During this same period plaintiff received the annual sum of $7,800 for her services to the corporation.

On June 26, 1972, in an effort to work out some accomodation between the parties, a custodian was appointed by order of this Court as provided for by 8 Del.C. § 226(a)(2). However, the deadlock between the parties persisted, and on March 29, 1973, the defendant having caused the sum of $86,893.40 [3] to be paid to himself as compensation for such fiscal year, an order was entered, on the recommendation of the custodian, which stipulated that such payment was without prejudice to the right to contest defendant's compensation in excess of his authorized salary of $20,800. Also authorized and paid on the custodian's recommendation was a dividend of $20,000 to be divided equally between plaintiff and defendant.

■　The authority to compensate corporate officers is normally vested in the board of directors, 8 Del.C. § 122(5), and the compensating of corporate officers is usually a matter of contract, Air Traffic & Service Corp. v. Fay, 96 U.S.App.D.C. 319, 196 F.2d 40. See also Fletcher, Cyclopedia Corporations, § 2113 (Perm.Ed.), Finch v. Warrior Cement Company, 16 Del.Ch. 44, 141 A. 54, and Lofland v. Cahall, 13 Del. Ch. 384, 118 A. 1.

■　Next, while defendant's authorized compensation for the fiscal year 1970 was concededly $60,000, his readoption of a formula basis for arriving at his compensation in the years following was clearly unauthorized, thus defendant's use of the previous formula method of calculating his compensation for the fiscal years 1971, 1972 and 1973 must be reexamined. I conclude that plaintiff's March 29th 1971 letter concerning defendant's compensation, when read in the light of the filing of this action on April 7, 1971, clearly constituted an adequate expression of plaintiff's intention to rescind the 1970 resolution concerning defendant's compensation and hence served to revoke board authorization for the continuing payment to him of compensation on the basis recognized for 1970.

By early April 1971 the management of Marble Craft was clearly deadlocked with its owner-managers in complete disagreement as to the amount of compensation to be paid the defendant, the payment of anything above a $400 weekly salary being opposed by plaintiff. Therefore, the only amount agreed upon by the board and hence the only authorized payment to Mr. Wilderman for the fiscal years 1971, 1972

---

3. Based on an authorized salary of $35,000 per annum plus 15% of gross receipts in excess of $300,000, a formula which was operative through the fiscal year 1970.

and 1973 would appear to have been at the rate of $20,800 per year, or $400 per week, and that additional compensation received by him for the years in question must find its authorization in the theory of quantum meruit.

Turning from the issue of corporate authorization of defendant's salary to the issue of the reasonableness of the compensation paid Mr. Wilderman, plaintiff contends that the compensation paid to defendant for the years in question was unreasonable, plaintiff arguing that although courts are hesitant to inquire into the reasonableness of executive compensation when it is fixed by a disinterested board, Kerbs v. California Eastern Airways, Inc., 33 Del.Ch. 69, 90 A.2d 652, rehearing den. 33 Del.Ch. 174, 91 A.2d 62, the standard for fixing executive compensation is obviously more strict when it is fixed by the recipient himself, 5 Fletcher, Cyclopedia Corporations, § 2129 (Perm.Ed.). And where, as in the case at bar, the recipient's vote as a director was necessary to the fixing of the amount of his compensation, then the burden of showing the reasonableness of such compensation clearly falls upon its recipent, Hall v. Isaacs, 37 Del.Ch. 530, 146 A.2d 602, aff'd in part, 39 Del.Ch. 244, 163 A.2d 288. See also, Meiselman v. Eberstadt, 39 Del.Ch. 563, 170 A.2d 720. This is so, of course, because of the fiduciary position which directors hold towards their corporation and its stockholders, Hall v. Isaacs, supra, Johnston v. Greene, 35 Del.Ch. 479, 121 A.2d 919, and Gottlieb v. Heyden Chemical Corp., 33 Del.Ch. 177, 91 A.2d 57.

As to the facts to be considered in reaching a determination of the question as to whether or not defendant has met the burden he must carry there is little authority in Delaware. In Hall v. Isaacs, supra, the Court was of the view that evidence of what other executives similarly situated received was relevant, and in Meiselman v. Eberstadt, supra, the ability of the executive was considered. Other factors which have been judicially recognized elsewhere are whether or not the Internal Revenue Service has allowed the corporation to deduct the amount of salary alleged to be unreasonable. Other relevant factors are whether the salary bears a reasonable relation to the success of the corporation, the amount previously received as salary, whether increases in salary are geared to increases in the value of services rendered, and the amount of the challenged salary compared to other salaries paid by the employer. See 2 Washington and Rothschild, Compensating the Corporate Executive, 848–873 (3rd Ed. 1962). Dr. Seligman, an expert, testified that on the basis of a financial analysis of Marble Craft and its present earnings that reasonable compensation for defendant would range between $25,000 and $35,000. It also appears that the Internal Revenue Service proposes to permit Marble Craft a deduction of $52,000 for defendant's 1971 compensation of $92,538.

On the present record I am not convinced that defendant has discharged his burden as to the reasonableness of amounts he has drawn for all of the years in question. He has, first of all, failed to produce substantial evidence as to what other executives in the local tile business earn. Next, in light of the gross earnings of the corporate defendant and the facts concerning work of Marble Craft at Longwood Gardens there is some doubt as to whether or not defendant's work has been as truly essential and productive as he contends. Furthermore, defendant's compensation was caused by his own fiat to rise rapidly from $30,000 in 1966 to over $90,000 for 1971, although the earnings of Marble Craft rose only from about $380,000 in 1966 to approximately $680,000 for 1971.

I conclude from a consideration of all of the facts and circumstances surrounding defendant's services to his corporation, including the fact that the total number of employees of the business is

about twenty, that compensation for defendant in excess of the compensation suggested by the financial analyst who testified at trial would be reasonable but that such compensation should be within the limits considered appropriate by the Internal Revenue Service. Such compensation should also constitute a reasonable increase over defendant's average salary of some $30,000 for the period 1963 through 1966 when the profits of Marble Craft were about half its 1971 earnings.

Thus, while for the fiscal years 1971, 1972 and 1973 Mr. Wilderman was technically entitled to be compensated for his services in the amount of only $20,800, I am of the opinion that in light of the nature of defendant's services to the corporation, which appear to have been important to its success, that he is entitled to compensation in the amount of $45,000 for the fiscal year 1971 and the same amount for fiscal 1973. Defendant's compensation of $35,000 for the fiscal year ending 1972 will be left undisturbed. Accordingly, he will be ordered to return $47,538 in excess compensation to the corporate treasury for fiscal 1971 and $41,893.40 for fiscal 1973, both amounts with interest.

Additionally, because payments to the Marble Craft pension fund have been tied to defendant's compensation for the years in question, defendant will be directed to repay to the defendant Marble Craft excessive payments to such fund in the same ratio as the refunds of his excessive compensation.

As to what should be appropriate dividends payable out of the reconstructed net profits of the company after the adjustments here directed to be made is, I believe, a matter for the board of directors in the first instance and in the event of deadlock for the custodian. I also decline to fix plaintiff's salary because such was not raised in the pleadings or at trial and for the reason given for declining to set a future dividend rate.

Turning next to the first and second counterclaims filed by defendant, which have to do with the division of former marital property, I am of the opinion that such causes of action are not only not germane to this derivative suit but that an adequate remedy at law exists for such claims, In re Wife K. (Del.Ch.) 297 A.2d 424. Accordingly, such counterclaims will either be dismissed or transferred to a court of appropriate jurisdiction as provided for under the provisions of 10 Del.C. § 1901.

An appropriate order may be submitted on notice.